"Ordinarily, when an offense is divisible in sections—one, of preparation, in one place. and another, of execution, in another place—the tribunals of either place have jurisdiction of the entire offense."

It was held in Thompson v. State, 106 Ala. 67, 17 South. 512, that, if a conspiracy was entered into in that state and one or more overt acts perpetrated there, the courts of that state have jurisdiction, although the act which was the subject of the conspiracy was performed in another state. The same rule prevails in Texas. Rogers v. State, 10 Tex. App. 655, 38 Am. Rep. 654. There are cases holding that, if the conspiracy is entered into within the jurisdiction of the court, the parties thereto are triable in that jurisdiction, notwithstanding the offense was to be committed without the jurisdiction (Com. v. Corlies, 8 Phil. 450), and if a conspiracy is formed without the jurisdiction an overt act committed by one of the conspirators within the jurisdiction is evidence of the crime within the jurisdiction where the overt act is committed. Commonwealth v. Lack, 1 Brewst. (Pa.) 511; Reg. v. Connoly, 25 Ont. 151.

In the celebrated case of People v. Mather, 4 Wend. 261, 21 Am. Dec. 122, in which the defendant was indicted for a conspiracy to abduct Morgan, a case which made a great sensation at the time, it was held that:

"If conspirators enter into the illegal agreement in one county, the crime is perpetrated there, and they may be immediately prosecuted; but the proceedings against them must be in that county. If they go into another county to execute their plans of mischief, and there commit an overt act, they may be punished in the latter county without any evidence of an express renewal of their agreement. The law considers that, wherever they act, there they renew, or, perhaps to speak more properly, they continue, their agreement, and this agreement is renewed or continued as to all whenever any one of them does an act in furtherance of their common design. In this respect, conspiracy resembles treason in England, when directed against the life of the King. The crime consists in imagining the death of the King. In contemplation of law, the crime is committed wherever the traitor is, and furnishes proof of his wicked intention by the exhibition of any overt act."

I am of the opinion that the facts alleged in the indictment constitute a crime committed within the county of New York, and that the grand jury by which it was found had legal authority to inquire into the crime and to find the indictment.

The demurrer, therefore, is disallowed, with leave, however, to the defendant to plead to the indictment.

Demurrer disallowed, with leave to defendant to plead to indictment.

---

(110 App. Div. 701)

### In re EMMONS' WILL.

(Supreme Court, Appellate Division, First Department. January 26, 1906.)

1. WILLS—REVOCATION BY OPERATION OF LAW—REVIVAL BY CODICIL.

The rule that no testamentary provision in other unexecuted or unattested papers can be incorporated into a will does not extend to a will properly executed, and which has been rendered inoperative in law, as by marriage of a woman, or to one executed while testator was of unsound mind or under restraint, in which case the instrument properly executed in form may be revived and validated by the proper execution of a codicil referring to such instrument or made for that purpose.

2. SAME.

An instrument executed by decedent as and for his will, but lacking the attestation of the two witnesses required by statute, could not be revived by, nor incorporated into, a subsequent validly executed testamentary instrument denominated a "codicil."

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 498.]

3. CODICIL—EFFECT.

A codicil executed according to the formalities of the statute is a final testamentary disposition, and, if so complete in itself as to be capable of execution, will stand, though there be no prior existent validly executed will.

4. SAME.

An insufficiently attested instrument, which decedent attempted to execute as his will, made his mother sole legatee and devisee; no executor being appointed. Subsequently he properly executed an instrument, purporting to be a codicil to his last will and testament, the only provision of which, in addition to the naming of executors of it and the former alleged will, was a bequest of money to a named legatee. Held, that the codicil was complete in itself, and was entitled to probate.

5. SAME—PROBATE—APPOINTMENT OF EXECUTORS.

The fact that a codicil appoints executors of the testator's estate alone entitles it to probate, though it contains no other provision.

Appeal from Surrogate's Court, New York County.

In the matter of proving the last will and testament, and codicil thereto, of Frederick L. Emmons, deceased. From a decree admitting to probate certain papers as the last will and testament of deceased, Frank Emmons, contestant, appeals. Reversed in part, and affirmed in part.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

Henry Meyer, for appellant.

William M. Beard, for respondent Baruch. Andrew S. Hammersley, for respondents executors.

HOUGHTON, J. Frederick L. Emmons attempted on the 30th day of December, 1902, to execute his holographic will. The paper is very informal, and makes his mother the sole legatee and devisee; no executor being appointed. It was signed by him, and published and declared as his last will and testament, in the presence, however, of only one witness, whose signature is the only one appearing thereto. On the death of the alleged testator this instrument was found in his safety deposit box, with other papers belonging to him. On the 16th day of May, 1904, the decedent properly executed what is stated therein to be a "codicil to my last will and testament, bearing date———, 190—." The only provision of this last instrument, in addition to the naming of executors of it and the former alleged will, is a bequest of $10,000 to the intestate of respondent Baruch. The attestation clause and the testimony of the subscribing witnesses show that it was published as a codicil to the alleged last will and testament. The executors named presented both instruments for probate. The appellant filed contesting allegations to the effect that the former paper should not be admitted to probate because it was not attested in conformity with the statute as a last will and testament, and that the latter paper should not be admitted to probate because it was not complete in itself, and only purported to

be a codicil to a will which was invalid. The learned surrogate felt constrained to admit both papers to probate, and from such decree this appeal is taken.

The theory of the respondents is that the properly probated and executed codicil, referring to the defectively executed will, validated it and incorporated it in the latter instrument, so that both were entitled to probate. Many English decisions, and those of many of our sister states, give support to the proposition that extraneous unattested documents may be incorporated into a will by proper reference thereto. In this state, however, that doctrine does not prevail, and the rule is that no testamentary provision in other unexecuted or unattested papers can be incorporated into a will. Cook v. White, 43 App. Div. 388, 60 N. Y. Supp. 153, affirmed 167 N. Y. 588, 60 N. E. 1109; Matter of the Will of O'Neil, 91 N. Y. 516; Matter of Conway, 124 N. Y. 455, 460, 26 N. E. 1028, 11 L. R. A. 796. In the Matter of Andrews, 43 App. Div. 394, 60 N. Y. Supp. 141, the question was elaborately discussed, opinions being written by four of the judges taking part in the decision, and one of the dissenting opinions was written in the expressed hope that the Court of Appeals might be attracted to a renewed consideration of the question and a modification of the rule. Such was not the result, however, for that decision was unanimously affirmed (162 N. Y. 1, 56 N. E. 529, 48 L. R. A. 662, 76 Am. St. Rep. 294), and on review of the authorities the doctrine was reiterated.

The rule, however, does not extend to a will properly executed, and which has been rendered inoperative by law, as by marriage of a woman (Brown v. Clark, 77 N. Y. 369), or to one which was executed while the testator was of unsound mind or under restraint (Cook v. White, supra). In such case the instrument, properly executed in form, may be revived and validated by the proper execution of a codicil referring to such instrument, or made for that purpose. Nor does the rule infringe upon the doctrine of revivor and republication of a validly executed will by the due execution and publication of a valid codicil. Matter of Campbell, 170 N. Y. 84, 62 N. E. 1070.

The prior instrument executed by the decedent was not a will, for it lacked the attestation of the two witnesses required by statute, and, being therefore unexecuted and unattested, it could neither be revived by, nor incorporated into, the subsequently validly executed testamentary instrument denominated a "codicil." It is unfortunate that probate must be denied this instrument. The deceased desired and attempted to give all his property to his mother. He was perfectly competent to decide to whom he would give his property, and there is no suggestion that there was any other will, or that the paper produced was not the one to which he referred in his codicil, notwithstanding the fact it is not identified by exact date. The remarks of the court in Matter of Andrews, 162 N. Y. 1, 56 N. E. 529, 48 L. R. A. 662, 76 Am. St. Rep. 294, are peculiarly applicable to the present situation:

"It is undoubtedly true that from time to time an honest attempt to execute a last will and testament is defeated by failure to observe some one or more of the statutory requirements. It is better that this should happen under a proper construction of the statute than that the individual case should be permitted to weaken those provisions calculated to protect testators generally from fraudulent alterations of their wills."

The question remains to be considered whether the instrument denominated a "codicil" should also be denied probate. It was undoubtedly the intention of the testator that this instrument should operate in connection with the will which he supposed he had executed, and that it should be an addition thereto. That his intention failed in this respect, however, does not defeat the instrument. The distinguishing feature of a will is that it shall take effect upon death, and the name by which it is called is immaterial. Matter of Probate of Will of Diez, 50 N. Y. 88. A codicil may modify the provisions of a will or supersede them entirely, or simply add to the disposition by introducing new beneficiaries. A validly executed will may have been lost and be incapable of proof, and yet the codicil, so far as it goes, is operative. Newcomb v. Webster, 113 N. Y. 191, 21 N. E. 77. A codicil executed according to the formalities of the statute is a final testamentary disposition, and. if there be an existent and complete will, it takes it up and incorporates it. Matter of Campbell, 170 N. Y. 84, 62 N. E. 1070. If, however, there be no such existent and validly executed will, and if the codicil be so complete in itself as to be capable of execution, then it must necessarily stand and be given the force of valid testamentary disposition.

The codicil in question, so far as it goes, is entirely complete. The carrying out of its provisions in no sense depends upon the will to which it attempts to refer. It simply carves out of the estate a legacy, and bequeaths it to an individual capable of taking. Besides, the instrument appoints executors of the testator's estate. If it contained no other provision, this would alone entitle it to probate. Matter of Davis, 105 App. Div. 221, 93 N. Y. Supp. 1004; Id., 182 N. Y. 468, 75 N. E. 530.

The decree appealed from, in so far as it admits to probate the paper dated December 30, 1902, must be reversed, and in all other respects affirmed, without costs to either party as against the other. All concur. INGRAHAM, J., in result.